HAROLD W. PRINCE ET AL. *vs.* BRACKETT, SHAW & LUNT COMPANY.

Somerset.     Opinion October 17, 1925.

*In order to sustain an action of deceit it must appear that the representations alleged to be false and to constitute deceit must be false; known to be false by the party making them; made with an intention and purpose to defraud, and that the other party relied and acted upon such false and fraudulent representations and suffered damage.*

The verdict cannot be sustained for the reason that deceit is not clearly and convincingly proven.

On exceptions and general motion for a new trial. An action of deceit and negligence brought to recover damages for the loss of plaintiff's sawmill, machinery, and lumber, by fire communicated from a kerosene engine, by which the mill was being operated, by means of sparks from a "back-fire" of the engine which plaintiffs purchased of defendant. Plaintiffs alleged that the agent of defendant in inducing plaintiffs to purchase the engine made false and fraudulent representations relative to the engine by which they were deceived and induced to purchase. A verdict was rendered for plaintiff and defendant filed a general motion for a new trial, and also entered several exceptions to refusals to give requested instructions. Motion sustained. New trial granted.

The case sufficiently appears in the opinion.

*Gower & Shumway*, for plaintiffs.

*Pattangall, Locke & Perkins*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, JJ.

WILSON, C. J., concurring in the result.

BARNES, J. In the course of their business sawing logs into lumber the plaintiffs lost their machinery and other property, from fire communicated from a gasoline-kerosene driven engine which they had purchased from the defendant, and brought this action by a writ charging in separate counts deceit and negligence on the part of the defendant in the sale of the engine.

Defendant was not the manufacturer, but a distributor, a mere vendor of the machine, an internal combustion engine; and the flame or spark that ignited the material destroyed appeared in what is commonly known as back-firing on the part of the engine, while being operated by the plaintiffs in person. During the trial plaintiffs introduced, as an exhibit the "order" upon which the engine was shipped, a paper partly in print and partly written by plaintiffs and the agent of the defendant, naming the engine, the price and terms of payment, and containing certain stipulations as to title, repossession by defendant in case of non-payment, claim for damages for non-performance of the machine, replacement of defective parts and an agreement to pay the price, together with other stipulations and some particulars of guaranty. This "order" was signed by plaintiffs and by the agent of the defendant as a witness, but not signed by defendant. It included the following words: "All previous communications between the parties hereto, verbal or written, are hereby abrogated and withdrawn, and this agreement when duly signed, constitutes the only agreement between the parties hereto."

It appears from the evidence that, for a period of only a few days less than seven months, negotiations looking to a contract of purchase had been carried on between plaintiffs and the defendant and its agent, and to plaintiffs' introduction of evidence of representations regarding the peculiar fitness of the engine to do the work required by plaintiffs, defendant seasonably reserved exception.

Defendant further presented fourteen several requests for instructions to the jury, which the Justice presiding refused to give, except so far as given by him in his charge, and to such refusal exceptions were taken. The charge of the Justice is made part of the bill of exceptions. Special findings were submitted to the jury, they returned a verdict for plaintiffs, on the counts charging deceit, and the defendant filed a motion for a new trial, on the usual grounds.

The first exception noted above may have been relied upon through misapprehension of the nature of the action. But, the action being upon deceit and not upon warranty the exception has no merit.

As to the second exception, a careful study of the charge satisfies this court that such of the requested instructions as were correct and pertinent were substantially given, and the defendant is found not to have been prejudiced by the refusal of the Justice to read them in the very words in which they were written.

Upon the motion, however, it becomes our duty to decide that the verdict cannot be sustained, for the reason that deceit is not clearly and convincingly proven. The rule in this State, never departed from, is well expressed in *Strout* v. *Lewis*, 104 Maine, 65: "The vital question is the proof of deliberately planned and carefully executed fraud on the part of the plaintiff's agent, for on no other hypothesis can the verdict be sustained. The charge is a serious one and the law imposes upon the defendant the burden of substantiating it by clear and convincing proof."

The representations alleged to be false, which plaintiffs claim to have been acting on when their sawmill was destroyed by fire, are found in a letter, written by defendant's agent, on January 17, 1920, at the very beginning of the seven months of inquiry and investigation into the fitness of the engine to do the work their immediate business seemed to them to require.

No representations in addition to or differing from those in the letter are satisfactorily proven. In fact Mr. Prince, one of the plaintiffs, expressly admits this, as shown in the following questions and his answers:

Q. "He," referring to defendant's agent who wrote the letter and negotiated the sale, "didn't tell you anything different or change the statements made in his letter in any way?

A. No, sir.

Q. He didn't qualify it at all?

A. No, sir.

Q. Or add anything to it?

A. Just what do you mean by that?

Q. I mean those representations he made in that letter: he didn't change them any? Did he add anything?

A. I probably wouldn't have remembered that so well because we were looking for recommendations. If the recommendations had been against it we would have remembered it. But if it all went to more and more prove that it was the proper thing we wouldn't have remembered it so quick.

Q. But, so far as you remember, it was about the same as in the letter?

A. Yes.

Q. He didn't take back any of it?

A. No, sir.

Q.  And you don't recall he added to it? .

A.  No, sir."

The jury heard this letter read, and must have had it, with the other exhibits of the case in their consultation room.

Some of the representations are but expressions of opinion, such as "This is the pride of our line.  We unreservedly claim that this is the best saw-mill power in the American market today."

Some are statements of advantages "obtained" (by others) from the use of this engine.

Certain of the assertions are couched in extravagant language, of the class known to every man of ordinary experience as "dealer's talk," that picturesque and laudatory style affected by nearly every trader in setting forth the attractive qualities of the goods he offers for sale.  And mere "dealer's talk" is not actionable.  *Bishop* v. *Small*, 63 Maine, 12.

Some of the representations are axiomatic.  Of one much is said by plaintiffs.  It follows: "They (meaning Avery Gasoline-Kerosine engines) entirely eliminate the fire risk which is always present about a steam mill."  Can there be any uncertainty about the meaning of the representation contained in this simple statement?

And is there any doubt that it means that such engines, by the absence of a wood or coal-burning furnace, free the manufacturer from the hazard of communication of the furnace fire to the fuel pile, building or material in the yard?

As to how much lumber the plaintiffs could saw in a day or how many gallons of fuel the engine would consume in sawing a thousand feet of lumber, under their manipulation, plaintiffs testify the agent positively assured them.  In his testimony the agent says he gave them the result of observations, of himself or his principal, as similar engines had been operated elsewhere.  And it is agreed that before selling the engine the agent took the plaintiffs to a far distant town where such an engine was in operation, and gave them every opportunity, without interference on his part, practical mill-men, as they claimed to be, to satisfy themselves of the capacity and economy of this type of motive power.

Both had had some experience with internal combustion engines, but they ventured to experiment with different oil than that recommended for this engine, and they strained the waste oils and mixed them with their fuel.  After more than a year of intermittent opera-

tion, when the engine back-fired, the oil, grease, shavings or sawdust, or all these, which had accumulated on the engine, took fire: it was communicated to other oil or gasoline, in some receptacle of the engine, and the end of another lumber mill was written in flame.

The instruction given the jury by the presiding Justice; "There must be alleged and proved by a fair preponderance of the evidence a material representation, which is false, known to be false by the party making it, or made recklessly as an assertion of fact without knowledge of its truth or falsity, made with the intention that it should be acted upon, and acted upon with damage," was correct.

They had the written representations of the letter. These they must consider, with the testimony as to other representations, under the law as given to them.

We close as in *Parlin* v. *Small*, 68 Maine, 289, "Although the law was accurately stated by the learned judge at the trial, we are not satisfied that it was sufficiently regarded by the jury."

*Motion sustained.*
*New trial granted.*